# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| ROBERT MCKINNON, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-262 |
| | ) | |
| BRYAN COUNTY, GEORGIA | ) | |
| SHERIFF DEPUTY #1, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* prisoner Robert McKinnon, III has filed this 42 U.S.C. § 1983 Complaint alleging that unidentified Bryan County, Georgia law enforcement officers improperly arrested and detained him in 2010. *See* doc. 1 at 8-12. The Court granted him leave to pursue his case *in forma pauperis*, doc. 3, and he has returned the required forms, docs. 4 & 5. The Court, therefore, proceeds to screen the Complaint. *See* 28 U.S.C. § 1915A. Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As McKinnon is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

I.   **Background**

McKinnon's Complaint includes detailed allegations of criminal proceedings against him in 2010. *See* doc. 1 at 4-7 (providing information "to show this Court the events that commenced rise of the status quo . . . ."). The facts alleged as the basis of the instant claims begin on May 19, 2010, when McKinnon appeared for an arraignment in Bryan County, Georgia. *Id.* at 8. He expressly alleges that the Bryan County Sheriff's Office received a warrant for his arrest issued by the Alachua County, Florida Sheriff's Office. *Id.* He was arrested by an unnamed Bryan County Sheriff's Office deputy. *Id.* Despite alleging the existence of the warrant, he contends that his arrest "was without probable cause, . . . without arguable plausible probable cause, and it was without active arrest warrant." *Id.* He alleges that, after being held for several hours and speaking with a deputy United States Marshal about an unrelated

investigation, he was told by a Bryan County Deputy, Defendant Hatfield, that no active warrants could be found. *Id.* at 9. Despite that representation, Hatfield "still did not release McKinnon from custody." *Id.* He alleges that he appeared before "Bryan County, Georgia Superior Court Magistrate Snyder" the next day, when he "under duress . . . signed . . . [a] waiver of extradition to Alachua County, Florida . . . ." *Id.* at 10. He alleges that "[o]n June 1, 2010, [he] arrived at Alachua County, Florida jail and became the victim of a [m]alicious [p]rosecution." *Id.* at 11.

Based on the facts alleged, he asserts claims against the unnamed deputy and Hatfield for "conspiracy under 18 U.S.C. § 241, violation of civil rights under 18 U.S.C. § 242, and a [f]alse [a]rrest, in violation of Search/Seizure under 4th Amendment of the U.S. Constitution." Doc. 1 at 11. He requests that the Bryan County Sheriff's Office "[c]ease and [d]esist in any actions that involve arresting anyone on the basis of a [f]ederal [h]old, with no active arrest warrant," and $5,000,000 in monetary damages. *Id.* at 13.

## II. Defendant Snyder

The caption of McKinnon's Complaint identifies "Bryan County, Georgia Superior Court Magistrate Snyder" as a defendant.[1] *See* doc. 1 at 1. His allegations make it clear that any claim he might assert against Judge Snyder arises from actions taken in his or her judicial capacity. *See id.* at 10. )). Judges are immune from suit for actions taken in their judicial capacities. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005); *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996). This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction. *See Stump*, 435 U.S. at 356; *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986); *see also Harvin v. Aten*, 2018 WL 10509901, at *2 (N.D. Ga. Oct. 30, 2018) (citing, *inter alia.*, *DeWayne v. State of Georgia, Inc.*, 2013 WL 12310839, at *5 (N.D. Ga. Dec. 10, 2013)) (dismissing claims against a Georgia magistrate judge based on judicial

---

[1] The title that McKinnon alleges is nonsensical. The Court is not aware of the members of the various divisions of the Bryan County court system in 2010, but Judge Snyder was either a superior court judge or a magistrate court judge, not both. Since, as discussed below, judicial immunity extends to the alleged actions taken in his judicial capacity, his correct title is moot.

immunity). Accordingly, all of McKinnon's claims against Judge Snyder should be **DISMISSED**.

### III. Improper Claims

McKinnon purports to assert claims under several federal criminal statutes. *See, e.g.,* doc. 1 at 11-12. Those sections prohibit, respectively, conspiracy "to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or law of the United States, or because of his having so exercised the same," 18 U.S.C. § 241, and "deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . .," 18 U.S.C. § 242. However, those criminal statutes do not provide McKinnon any civil cause of action. *See, e.g., Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (finding that *pro se* plaintiff's claims were precluded "because, as criminal statutes, [the cited sections] do not

convey a private right of action."). Any claim that McKinnon asserts pursuant to the cited statutes should, therefore, be **DISMISSED**.

### IV. False Arrest and False Imprisonment

Both "false arrest" and "malicious prosecution" are recognized claims, under 42 U.S.C. § 1983, for distinct violations of the Fourth Amendment. *See, e.g., Williams v. Aguirre*, 965 F.3d 1147, 1157-58 (11th Cir. 2020) (discussing distinct theories of "false arrest" and "malicious prosecution," under § 1983). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[A] federal . . . claim for false arrest requires the plaintiff to show the absence of probable cause at the time of the arrest." *Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020). A § 1983 claim for false imprisonment is "based on a detention pursuant to that arrest [that lacked probable cause]." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996); *see also Wallace*, 549 U.S. at 389 ("[F]alse imprisonment consists of detention without legal process."). Further, "false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or

arraigned on charges." *Wallace*, 549 U.S. at 389. At that point, a plaintiff's claim is one for malicious prosecution.[2] *Id.* at 390.

Section 1983 claims are subject to the statute of limitations applicable to personal-injury torts under state law. *Wallace*, 549 U.S. at 387 (internal citation omitted). Under Georgia law, the statute of limitations for such claims is two years. O.C.G.A. § 9-3-33; *see Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). Generally, the statute of limitations for § 1983 claims begins to run when facts supporting the cause of action are or should be reasonably apparent to the plaintiff. *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (per curiam).

Even assuming that the facts McKinnon alleges were sufficient to assert a false arrest or false imprisonment claim for the period between his arrest on May 19, 2010 and his appearance before a judicial officer on

---

[2] McKinnon's pleading does not appear to assert any malicious prosecution claim against the named defendants. It is, however, ambiguous. *See* doc. 1 at 11 (alleging malicious prosecution commenced upon McKinnon's arrival in Florida). Even supposing that McKinnon alleged such a claim against one of the defendants in this case, he does not allege that any criminal proceedings terminated in his favor. Favorable termination is an essential element of a § 1983 malicious prosecution claim. *See, e.g., Brannen v. McGlamery*, 2021 WL 6072558, at *3 (S.D. Ga. Dec. 23, 2021).

May 20, 2010, those claims are untimely.  McKinnon expressly alleges that he was brought before Judge Snyder and, although he disputes the legitimacy of the process, he signed a waiver of extradition to Florida. Doc. 1 at 10.  Even assuming that his prior arrest and detention was without legal process, it became subject to legal process after that appearance.  *See, e.g., Taylor v. Kemp*, 2020 WL 5648742, at *6 (S.D. Ga. Aug. 11, 2020) ("Once an arrestee's unlawful detention becomes a product of legal process, his continued custody may still be unlawful, but any damages suffered after that point must be recovered under the entirely distinct tort of malicious prosecution . . . .").  Since his false arrest or false imprisonment claims accrued no later than May 20, 2010, the statute of limitations on those claims ran out in 2012; approximately a decade before he filed his Complaint.  *See* doc. 1.  McKinnon's false arrest and false imprisonment claims, therefore, are facially defective.

Despite the apparent untimeliness of the claims arising in 2010, McKinnon makes several assertions that might be intended to address that defect.  He first asserts "[e]quitable [e]stoppel."  Doc. 1 at 12.  He asserts that the doctrine will "prevent Defendants from taking unfair advantage of [him], when through [f]alse [l]anguage and [c]onduct, [they]

induced [him] to act in a certain way, which resulted in injury." *Id.* Since equitable estoppel is most commonly a contract doctrine, it's application in this context is dubious, at best. *See, e.g., Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1320 (11th Cir. 2013) ("In essence, equitable estoppel precludes a party from claiming the benefits of some provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose.").

Second he seeks "to activate Continuing Violation as defensive doctrine to prevent Defendants from taking unfair advantage of [him], when [f]alse [i]mprisonment continued by means of extension to agents acting for Alachua County, FL, during end of May 2010, when they arrived at Bryan County, GA." Doc. 1 at 12. The implications of McKinnon's assertion of a "continuing violation" arising from his false arrest or false imprisonment is simply not clear.[3] As this Court has

---

[3] As this Court has explained:
> "[t]he continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001); *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006). "The critical distinction in the continuing violation analysis . . . is whether the plaintiff[ ] complain[s] of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of that

explained above, false arrest or imprisonment generally ceases when continued detention becomes pursuant to legal process. McKinnon's alleged appearance before a judicial officer, of some description, on May 20, 2010, therefore, provides the apparent accrual of his claims, for statute-of-limitations purposes. It is not clear whether the "continuing violation" he asserts is merely his continued detention, pursuant to some criminal proceeding in Florida, or some other unstated theory.

Despite the appearance that McKinnon's false arrest and false imprisonment claims are time-barred, "when a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). The Court will do so here.

## V.   Conclusion

In summary, McKinnon's claims against "Bryan County, Georgia Superior Court Magistrate Snyder" should be **DISMISSED**. Any claim

---

violation into the present, which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003.)

*Brantley Cnty. Dev. Partners, LLC v., Brantley Cnty., Ga.*, 559 F. Supp. 3d 1345, 1365 (S.D. Ga. 2021).

purportedly pursuant to 18 U.S.C. §§ 241 or 242 should be **DISMISED** for failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1). His assertion of a 42 U.S.C. § 1983 claim for false arrest or false imprisonment must be amended. He is **DIRECTED** to submit an Amended Complaint clarifying his assertion of those claims by no later than January 6, 2022. McKinnon is advised that his amended complaint will supersede his original pleadings and therefore must be complete in itself. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n. 1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). The Clerk is **DIRECTED** to enclose a blank copy of Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)) with the service copy of this Order for McKinnon's convenience. Failure to comply with the Court's instructions may result in dismissal. *See* Fed. R. Civ. P. 41(b).

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy

11

on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

## VI. Filing Fee

Finally, the Court must assess McKinnon's filing fee. *See* 28 U.S.C. § 1915(b). Plaintiff's prisoner trust fund account statement reflects $0.00 in average monthly deposits and balance. Doc. 5 at 1. Based upon his furnished information, he does not owe any initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall

set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.[4]

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 28th day of November, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.