# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

ROBERT MCKINNON, III,           )
                                )
    Plaintiff,                  )
                                )
v.                              )     CV422-262
                                )
BRYAN COUNTY, GEORGIA           )
SHERIFF DEPUTY #1, *et al.*,    )
                                )
    Defendants.                 )

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* prisoner Robert McKinnon, III filed this 42 U.S.C. § 1983 Complaint alleging that unidentified Bryan County, Georgia law enforcement officers improperly arrested and detained him in 2010. *See* doc. 1 at 8-12. The Court granted him leave to pursue his case *in forma pauperis*, doc. 3, and he returned the required forms, docs. 4 & 5. The Court screened his Complaint, recommended that his claims against one defendant be dismissed, and required him to submit an amended complaint. *See generally* doc. 7. He has objected to the recommendation and submitted an amended complaint. Docs. 8 & 9.

The Court's prior Report and Recommendation recommended dismissal of McKinnon's claims against a Bryan County, Georgia

magistrate judge, based on his judicial immunity. *See* doc. 7 at 4-5. It also recommended dismissal of claims ambiguously asserted pursuant to two federal criminal statutes. *Id.* at 5-6. Finally, it noted that McKinnon's remaining § 1983 claims appeared to be barred by the applicable two-year statute of limitations but permitted him to amend. *See id.* at 6-10.

McKinnon's objections are discussed below in the Court's consideration of his Amended Complaint. Generally, however, those objections focus on his disagreement with the Court's recommended application of judicial immunity to bar his claims against Defendant Magistrate Judge Snyder. *See generally* doc. 8. His Amended Complaint continues to assert claims against Snyder. *See* doc. 9 at 5. His Amended Complaint supersedes his original Complaint. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). The recommendation that his claims against Snyder in the original Complaint be dismissed is, therefore, moot. Moreover, his Amended Complaint omits any reference to claims arising from federal criminal statutes. *See generally* doc. 9. The prior recommendation that those claims be dismissed is, therefore, also moot. Accordingly, the prior

recommendations are **VACATED**. Doc. 7, in part. The Court, therefore, proceeds to screen McKinnon's Amended Complaint. *See* 28 U.S.C. § 1915A.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Amended Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As McKinnon is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

McKinnon's Complaint included detailed allegations of criminal proceedings against him in 2010. *See* doc. 1 at 4-7 (providing information "to show this Court the events that commenced rise of the status quo . . . ."). His Amended Complaint also includes a detailed history of his arrest and detention in Bryan County and his subsequent extradition to Florida. *See* doc. 9 at 6-11. McKinnon alleges that, on May 19, 2010, "the

Bryan County, GA Sheriff's Office . . . received a teletype from Gainesville, FL Police Department . . . [that] included a sworn complaint affidavit and fugitive arrest warrant," for McKinnon's arrest. *Id.* at 6. He alleges that the attached arrest warrant was for another individual "Gregory Bernard Epps."[1] *Id.* He alleges various misconduct during his subsequent extradition to Florida. *Id.* at 7-8. As relevant here, however, he expressly alleges that, after extradition, he was convicted of multiple counts "[o]n September 15, 2011, [by] the Eighth Judicial Circuit Court (*Alachua County, FL*) . . . ." *Id.* at 8.

Both "false arrest" and "malicious prosecution" are recognized claims, under 42 U.S.C. § 1983, for distinct violations of the Fourth

---

[1] The Court notes that McKinnon has asserted this argument before. *See McKinnon v. Jones*, 1:14-cv-227, doc. 94 at 13-14 (N.D. Fla. Mar. 30, 2016) (reciting McKinnon's allegations in support of his § 2254 habeas petition that "Mr. Epps' exhausted arrest warrant was manipulated then used by [Gainesville Police Department] detectives in order to have [McKinnon] arrested in Pembrooke, Georgia May 19, 2010, then extradited into their jurisdiction."). The Court denied relief, explaining his "claim concerning the 'exhausted' warrant/case number is actually based on a typographical error . . . ." *Id.* at 15. The court later stated, in rejecting McKinnon's argument that "their (sic) was no legal arrest warrant issued for Petitioner's arrest out of Alachua County, Florida in 2010," *id.* at 23, that "the events as imagined by petitioner simply did not happen," *id.* at 24. The Court might take judicial notice of those findings, apparently contradicting the factual allegations made here. *Cf. Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal system . . . ."). For the reasons discussed below, McKinnon's claims are untimely, even assuming that his allegations concerning misconduct were true. Consideration of the Northern District of Florida's disposition of his § 2254 petition is, therefore, moot.

Amendment. *See, e.g., Williams v. Aguirre*, 965 F.3d 1147, 1157-58 (11th Cir. 2020) (discussing distinct theories of "false arrest" and "malicious prosecution," under § 1983). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[A] federal . . . claim for false arrest requires the plaintiff to show the absence of probable cause at the time of the arrest." *Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020). A § 1983 claim for false imprisonment is "based on a detention pursuant to that arrest [that lacked probable cause]." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996); *see also Wallace*, 549 U.S. at 389 ("[F]alse imprisonment consists of detention without legal process."). Further, "false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389. At that point, a plaintiff's claim is one for malicious prosecution.[2] *Id.* at 390.

Section 1983 claims are subject to the statute of limitations applicable to personal-injury torts under state law. *Wallace*, 549 U.S. at

---

[2] McKinnon's Amended Complaint does not include any allegation of malicious prosecution by these defendants. *See* doc. 9 at 10-11. He does refer to "malicious prosecution" that occurred in Florida. *See id.* at 8 (alleging that, after his transport

5

387 (internal citation omitted). Under Georgia law, the statute of limitations for such claims is two years. O.C.G.A. § 9-3-33; *see Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). Generally, the statute of limitations for § 1983 claims begins to run when facts supporting the cause of action are or should be reasonably apparent to the plaintiff. *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (per curiam). "If a prisoner's allegations in his complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a viable claim," under § 1915A. *Covington v. Smith*, 2022 WL 4363310, at *3 (11th Cir. Sept. 21, 2022).

Even assuming that the facts McKinnon alleges were sufficient to assert a false arrest or false imprisonment claim for the period between his arrest on May 19, 2010 and his conviction on September 15, 2011, those claims are untimely by years. Assuming, further, that any

---

from Georgia to Florida, he "became the victim of a true Malicious Prosecution."). Even supposing that McKinnon asserted such a claim against one of the defendants in this case, he does not allege that any criminal proceedings terminated in his favor. Favorable termination is an essential element of a § 1983 malicious prosecution claim. *See, e.g., Brannen v. McGlamery*, 2021 WL 6072558, at *3 (S.D. Ga. Dec. 23, 2021).

6

detention prior to his conviction was without legal process, it became subject to legal process no later than his conviction. *See, e.g., Taylor v. Kemp*, 2020 WL 5648742, at *6 (S.D. Ga. Aug. 11, 2020) ("Once an arrestee's unlawful detention becomes a product of legal process, his continued custody may still be unlawful, but any damages suffered after that point must be recovered under the entirely distinct tort of malicious prosecution . . . ."); *see also, Wrice v. Burge*, 187 F. Supp. 3d 939, 953 (N.D. Ill. 2015) (plaintiff "was detained pursuant to legal process no later than . . . when he was convicted . . . ."). Since his false arrest or false imprisonment claims accrued no later than September 15, 2011, the statute of limitations on those claims ran out in 2013; approximately a decade before he filed his Complaint. *See* doc. 1. McKinnon's false arrest and false imprisonment claims, therefore, are facially defective. His remaining claims, which invoke violations of the Fourth and Fourteenth Amendments, are similarly based on events that occurred no later than 2010. *See* doc. 9 at 10-11. Section 1983 claims arising exclusively from

events in 2010-2011, regardless of the alleged constitutional right violated, are untimely.

The Court previously noted that McKinnon's original Complaint made several assertions that might bear on the timeliness of his allegations. *See* doc. 7 at 8-10. First, he asserted that the generalized "[f]acts in the instant complaint . . . compels this Court to activate Equitable Estoppel as defensive doctrine to prevent Defendants from taking unfair advantage of McKinnon . . . ." Doc. 1 at 12. The Court noted that "equitable estoppel" is frequently invoked in the context of contract actions, but otherwise protested that its application to McKinnon's allegations was unclear. Doc. 7 at 9. McKinnon's Objection to the R&R and his Amended Complaint serve to clarify his contention concerning equitable estoppel, even if it is no more compelling for that clarity.

McKinnon's Objection asserts that the waiver of extradition he alleges he signed, albeit allegedly fraudulently, is the contract at issue. *See* doc. 8 at 11 ("In the instant case, McKinnon has appropriately asserted facts of the interdependent and concerted fraud committed by BCSO (nonsignatory) and Magistrate Judge Darrell Snyder (signatory)

8

to compel activation of equitable estoppel, to enforce contract against him (McKinnon)."); doc. 9 at 11(asserting that equitable estopped applies based on the "attached Contractual Interstate Agreement on Detainers Act"). While the Court remains unconvinced by McKinnon's apparent attempt to invoke contract principles based on actions taken in a state criminal proceeding—no matter how fraudulent or malicious those actions allegedly were—based on his Amended Complaint's allegations, the Court is able to discern a more plausible application. *See, e.g.,* doc. 8 at 10-10 (referring to application of doctrine to "estop[ a party] from raising a limitation defense . . ."). The Amended Complaint alleges that "[t]he combined aforementioned fraud prevented McKinnon from filing [a] timely complaint . . . ." Doc. 9 at 9.

The Eleventh Circuit has recognized that, in § 1983 cases, "[t]he doctrine of equitable estoppel prevents a defendant from invoking a statute-of-limitations defense if the defendant's conduct induced the plaintiff to forbear from bringing suit within the limitations period." *Barcelona v. Fogelgren,* 664 F. App'x 884, 886 (11th Cir. 2016). In such an application, a contractual relationship between the parties is not required. *See id.* at 885. However, the *Barcelona* court explained that

9

the equitable estoppel argument in that context was meritless where the plaintiff "does not allege any actions by the defendants that caused him to file his complaint after the [applicable statute of limitations] period had run." *Id.* at 886.

McKinnon's equitable estoppel argument here is meritless. McKinnon's assertion of equitable estoppel asserts only that his subsequent incarceration, and his attempts to "prove his innocence," prevented him from filing the instant claims timely. He contends that "[t]he combined aforementioned fraud prevented McKinnon from filing timely complaint [sic] (entirely of envisioned fraud was successful, but not limited to, where aforementioned conduct and language caused redirection, which compelled McKinnon focus [sic] on PROVING HIS INNOCENCE to obtain his FREEDOM IN FLORIDA)." Doc. 9 at 9 (emphasis omitted). McKinnon's allegation that he focused on other litigation which he deemed more urgent does not allege that any defendant prevented his timely filing of these claims.

The United States Court of Appeals for the Seventh Circuit has recognized, in the context of a false arrest claim, that defendants' intentional withholding of evidence was insufficient to support equitable

estoppel, noting "[a]t most, Defendants' conduct delayed filing." *Rosado v. Gonzalez*, 832 F.3d 714, 717 (7th Cir. 2016); *see also Williams v. Allen*, 2017 WL 1653744, at *4 (M.D. Fla. May 2, 2017) ("[E]quitable estoppel is only available where a defendant induces a plaintiff to forbear filing suit."). Here, McKinnon does not even allege *these* defendants' conduct delayed his filing; he alleges that they initiated a series of events that gave him more pressing matters to litigate.[3] He "has not shown that any affirmative misconduct prevented him from suing in time." *Rosado*, 832 F.3d at 717 (internal quotation marks, citations, and alterations omitted). His assertion of equitable estoppel to avoid the clear untimeliness of the instant claims is, therefore, meritless.

---

[3] McKinnon's allegations concerning express conspiracy between Snyder and Florida law enforcement, which, however incredible, the Court assumes to be true at this stage, do not affect the analysis of his equitable estoppel argument. McKinnon alleges that Snyder and a Florida detective had a "phone conference" on May 19, 2010. *See* doc. 8 at 8. He further alleges that during that conference, "Magistrate Darrell Snyder agreed to commence extradition—process against McKinnon to fraudulently seal his fate—through contractual Interstate Agreement on Detainers (waiver of extradition document), so civil suit for false—arrest and false imprisonment would never commence in a timely (GA statues of limitation is 2 years) fashion." *Id.* Fully crediting that allegation, McKinnon's prosecution in Florida did not, nor could it, *prevent* his filing the instant claims. Crediting his allegation in the Amended Compliant, he chose to litigate the validity of his Florida conviction instead of the instant claims. Snyder's alleged intentional conduct, therefore, did not cause these claims to be untimely filed.

11

McKinnon's original Complaint also invoked the "continuing violations doctrine," in an apparent attempt to avoid the time bar on his claims. *See* doc. 1 at 12. His Objection and Amended Complaint include statements that, similarly, implicate an assertion of continuing violation. *See* doc. 8 at 10 (alleging that Snyder's "[f]raud has remained intact against McKinnon," in the form of his continued incarceration based on his Florida conviction); *see also* doc. 9 at 9 ("McKinnon's over a decade (10 years) plus of fighting to prove his innocence, to obtain his freedom in Florida, up to this very day, has met to no avail, due to FRAUD remining intact against him.").

Those allegations serve to address the lack of clarity in McKinnon's assertion of a continuing violation, which the Court previously noted. *See* doc. 7 at 9-10. However,

> "[t]he continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001); *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006). "The critical distinction in the continuing violation analysis . . . is whether the plaintiff[ ] complain[s] of the present consequence of a one-time violation, which does not extend the limitations period, or the

>continuation of that violation into the present, which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003.)

*Brantley Cnty. Dev. Partners, LLC v., Brantley Cnty., Ga.*, 559 F. Supp. 3d 1345, 1365 (S.D. Ga. 2021). McKinnon clearly alleges the continuing effect, *i.e.,* his continued incarceration, which he contends resulted from the "fraud" that occurred in 2010. His Objection and Amended Complaint are entirely devoid of *any* alleged conduct occurring later than his 2011 conviction. *See generally* docs. 8 & 9. He, therefore, has not alleged any continuing violation sufficient to extend the statute of limitations on his claims.

McKinnon also alleges, even if only in a conclusory fashion, that he did not discover the facts supporting these claims until 2022. *See* doc. 9 at 9 ("McKinnon discovered FRAUD in 2022."). Regardless of the alleged fraudulent conduct, McKinnon alleges that he was told in 2010 that there was no active Florida warrant for his arrest. *See* doc. 9 at 6-7. Once he learned that he was detained without probable cause and without a valid warrant, "the facts supporting his unlawful arrest action were apparent . . . ." *Mathis v. Vizcarrondo*, 792 F. App'x 746, 747 (11th Cir. 2019). As discussed above, any false imprisonment claim accrued no later than

13

2011 when he was convicted, even assuming that conviction were somehow invalid.

Finally, although McKinnon does not expressly assert it, he might avoid the time bar on his claims if he were entitled to equitable tolling of the statute of limitations. *See, e.g., Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."). "[E]quitable tolling is an extraordinary remedy that should be extended only sparingly." *Shuler v. Duke*, 792 F. App'x 697, 703 (11th Cir. 2019) (internal quotation marks and citation omitted). Moreover, "imprisonment—by itself—is no 'extraordinary circumstance' warranting automatic equitable tolling: an imprisoned litigant must still show he pursued diligently his rights." *Id.* Even assuming that McKinnon's allegations of misconduct were sufficient, in addition to his imprisonment, to allege an extraordinary circumstance, he has not alleged any fact that suggests he pursued the rights at issue in this case, as opposed to the rights he pursued in his Florida litigation, diligently over the last ten years. He has, therefore, not borne his burden

14

to show he is entitled to equitable tolling. *See, e.g., White v. Lewandowski*, 2017 WL 2436599, at *3 (S.D. Ga. June 5, 2017) (quoting *Booth v. Carnival Corp.*, 522 F.3d 1148, 1150 (11th Cir. 2008)) ("If 'an equitable event prevented a plaintiff's timely action,' equitable tolling may be available, but the plaintiff bears the burden of establishing such tolling is warranted.")

In summary, all of McKinnon's claims arising from his arrest in Bryan County, Georgia and his extradition to Florida in 2010 are untimely. His objections concerning the prior determination of Magistrate Judge Darrell Snyder's judicial immunity, *see* doc. 8 at 2-5, are irrelevant because, even assuming Snyder was not immune, the claims against him are also time-barred. As the United States District Court for the Northern District of Florida noted "[r]egardless of how Plaintiff spins the facts . . . , the fact remains that [his] central claim is that Defendants engaged in misconduct that resulted in his allegedly false arrest and incarceration in [2010 or 2011]. . . . Plaintiff is not entitled to a life time free pass to drag his claims for conspiracy, false arrest, and other related claims past the statute of limitations," based on allegations of "illegal behind-the-scenes conduct." *Sanders v. Beck*, 2018

WL 4326860, at * 6 (N.D. Fla. Aug. 23, 2018), *adopted* 2018 WL 4326812 (N.D. Fla. Sept. 10, 2018). Accordingly, McKinnon's Amended Complaint, doc. 9, should be **DISMISSED**.[4]

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and

---

[4] Although McKinnon's "Statement of Claims" lists constitutional violations, his relief requested refers to bases of damages that might implicate state law claims. *See* doc. 1 at 12 (referring to "fraud," "slander," and "tortious interference."). To the extent that McKinnon intended to assert any state-law claims in his Amended Complaint, the Court should decline to exercise subject matter jurisdiction over those claims, since the federal claims are subject to dismissal. *See* 28 U.S.C. § 1367(c); *see also, e.g., Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) ("[I]f the federal claims are dismissed prior to trial, [*United Mine Workers v.*] *Gibbs* strongly encourages or even requires dismissal of state claims." (internal quotation marks and citations omitted)).

16

recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 29th day of December, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA